IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 17-cv-2566

CAPITAL CITY BANK,
a Florida corporation,

      Plaintiff,

v.

BROWN CONTRACTORS, INC.
a Colorado corporation,

      Defendant.

## COMPLAINT

Plaintiff Capital City Bank ("Capital City"), a Florida corporation, by and through undersigned counsel, hereby sues the Defendant Brown Contractors, Inc. ("Brown"), a Colorado corporation, and in support thereof states the following:

### PARTY ALLEGATIONS

1. Capital City is a Florida chartered banking corporation.

2. Brown is a Colorado corporation.

### ALLEGATIONS APPLICABLE AS TO SUBJECT MATTER JURISDICTION

3. Capital City is a citizen of the State of Florida, incorporated under the laws of Florida, with its principal place of business located in Florida.

4. Brown is a corporation incorporated under the laws of Colorado, with its principal place of business in Colorado.

5. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

## ALLEGATIONS APPLICABLE TO VENUE

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) or (2) in that this action is filed in a judicial district in which Brown resides (as defined by 28 U.S.C. § 1391(c)) and/or a substantial part of the events or omissions giving rise to the claim occurred.

## ALLEGATIONS APPLICABLE TO CONDITIONS PRECEDENT

7. All conditions precedent to the bringing of this action have been performed, excused, and/or waived.

## GENERAL ALLEGATIONS

**A.   The Factoring Relationship.**

8. Capital City is, amongst other things, in the factoring business, which business involves, inter alia, the purchasing[1] of accounts ("Accounts")[2] from businesses ("Factoring Clients") with whom it has formed a contractual relationship, the terms of which are generally contained in invoices.

---

[1] For the purpose of this case, the term 'purchasing' has the meaning given to this term by the Uniform Commercial Code ("UCC"), as adopted throughout the United States. A typical uniform definition may be found in Colorado's version of the UCC, and the term means "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." C.R.S.A. § 4-1-201(b)(29).

[2] For the purpose of this case, the term 'Accounts' has the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in Colorado's version of the UCC, and the term means "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold…, (ii) for services rendered." C.R.S.A. § 4-9-102(a)(2).

2

9. Within the factoring industry, the entity that purchases Accounts is commonly referred to as the "Factor" or "Purchaser" of Accounts, in this case Capital City. The entity from whom the Accounts are purchased is commonly referred to as the "Factoring Client" or "Seller," in this case non-party Benchmark Fabricating, LLC ("Benchmark"). The Factoring Client's customer for whom the Seller has performed service(s) or sold good(s) and to whom an invoice is ordinarily issued to evidence the terms of sale and request payment is commonly referred to as the "Customer" or "Account Debtor,"[3] in this case Brown.

10. On or about February 13, 2006, Capital City and Benchmark entered into a Working Capital Finance Agreement (the "Factoring Agreement"). A true and correct copy of the Factoring Agreement is attached as **Exh. A**, but for any terms or provisions which are deemed confidential, which have been redacted.

11. Pursuant to the Factoring Agreement, Benchmark offered to sell to Capital City all of Benchmark's Accounts, which Accounts Benchmark contractually represented and warranted at the time of sale and therefore would qualify as eligible "bona fide" Accounts. In exchange for Benchmark's sale of all its rights, title and interest in and to the Accounts, Capital City made purchase price payments to Benchmark.

12. In addition to acquiring an ownership interest in the Accounts that were specifically purchased from Benchmark (the "Purchased Accounts"), Benchmark granted Capital City a first priority security interest in Benchmark's assets (as defined in the Factoring

---

[3] For the purpose of this case, the term 'Account Debtor' has the meaning given to this term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in Colorado's version of the UCC and the term means "a person obligated on an account." C.R.S.A. § 4-9-102(a)(3).

Agreement) as collateral assets which included, among other things, all then owned or later acquired Accounts, equipment, inventory, equipment, etc., and all proceeds thereof (collectively, the "Collateral").[4]

13. In accordance with the Factoring Agreement, Benchmark offered for sale and Capital City purchased, among others, Invoice No. 5812, dated May 19, 2017, in the amount of $128,052.00, for good and/or services provided by Benchmark to Brown (the "Outstanding and Unpaid Invoice"). A true and correct copy of the Outstanding and Unpaid Invoice is attached as **Exh. B**.

**B. Benchmark's Breach of the Factoring Agreement and Capital City's Relief from the Automatic Stay.**

14. Benchmark has committed an Event of Default under the Factoring Agreement, by failing to repurchase a Purchased Account and to pay Capital City, upon demand, the full amount due thereunder, including in respect to the Obligations, as defined by the Factoring Agreement.

15. Pursuant to Section 7.3 of the Factoring Agreement, upon the occurrence of any Event of Default, Capital City may enforce any rights under the Factoring Agreement or applicable law.

16. Pursuant to UCC § 9-607, as codified in the Colorado Statutes, after any Event of Default, Capital City may notify Benchmark's customers, i.e. Account Debtors, to make

---

[4] For the purposes of this case, the term 'Collateral' has the meaning given to the term by the UCC, as adopted throughout the United States. A typical uniform definition may be found in Colorado's version and means "the property subject to a security interest or agricultural lien. The term includes: (A) proceeds to which a security interest attaches; (B) accounts, chattel paper, payment intangibles, and promissory notes that have been sold; and (C) goods that are the subject of a consignment." C.R.S.A. § 4-9-102(12).

4

payment directly to Capital City, take all proceeds and enforce the obligations of the Accounts Debtors, including Brown, and exercise the rights of Benchmark with respect to the Accounts.

17. On July 14, 2017, Benchmark filed for Chapter 7 Bankruptcy in the Southern District of Georgia, Case No. 17-30320-SDB (the "Benchmark Bankruptcy").

18. On September 7, 2014, the Court in the Benchmark Bankruptcy entered a Consent Order Granting Capital City's Amended Motion for Relief from the Automatic Stay and For Authorization to Exercise the Right to Apply Prepetition Case Collateral Held in Deposit Account Against Prepetition Claim (the "Stay Relief Order"). A true and correct copy of the Stay Relief Order is attached as **Exh. C**.

19. Pursuant to the Stay Relief Order, "the automatic stay is terminated and Capital City shall be entitled to exercise all of its ownership rights as well as its rights as a secured creditor in all Collateral, under Article 9 of the Uniform Commercial Code, applicable state law and the Factoring Agreement, including, without limitation, seeking to enforce the payment of all purchased and non-purchased Accounts, including, but not limited to commencing actions against any account debtors to seek to collect the Debtor's prepetition Accounts."

**C.   The Notice of Assignment Requirement Payment be Made to Capital City Upon Maturity of the Invoices and Brown's Breach.**

20. Pursuant to the factoring arrangement between Capital City and Benchmark, UCC § 9-406, UCC § 9-607, and the Stay Relief Order, on or about September 14, 2017, Capital City sent a written notification to Brown, authenticated by an authorized representative of Capital City, as assignee, giving notice to Brown that Benchmark's present and future Accounts had been assigned to Capital City and providing that all present and future payments owing to

5

Benchmark should instead be paid by Brown to and only to Capital City, including, without limitation, the Outstanding and Unpaid Invoice, if Brown wishes to discharge its debt owing on the Accounts (the "Notice of Assignment"). A true and correct copy of the Notice of Assignment is attached hereto as **Exh. D**.

21.     As a result of Brown having received the Notice of Assignment, Brown's obligation to pay Capital City became triggered under common law and/or pursuant to the UCC.

22.     A typical example of the applicable UCC provision may be found at Colorado Statutes § 4-9-406 which states that:

> . . . an account debtor [Brown] on an account . . . may discharge its obligation by paying the assignor [Benchmark] until, but not after, the account debtor [Brown] received a notification, authenticated by the assignor [Benchmark] or the assignee [Capital City], that the amount due or to become due has been assigned and that payment is to be made to the assignee [Capital City]. After receipt of the notification, the account debtor [Brown] **may discharge its obligation by paying the assignee [Capital City] and may not discharge the obligation by paying the assignor [Benchmark].**

See C.R.S.A. § 4-9-406(a) (emphasis added).

23.     After Brown's receipt of the Notice of Assignment, Brown was obligated to pay Capital City for the Outstanding and Unpaid Invoice.

24.     After receipt of the Notice of Assignment, Brown was not legally permitted to satisfy its obligations to pay the Outstanding and Unpaid Invoice by paying any other party than Capital City and, to date, Capital City has not received any payment towards the Outstanding and Unpaid Invoice notwithstanding that the Outstanding and Unpaid Invoice owed by Brown has matured and has been delinquent in excess of one hundred and fifteen (115) days.

25. The Notice of Assignment issued was legally sufficient under Article 9 of the UCC to establish Capital City's exclusive right to receive payment of all Accounts from Brown and to preclude any discharge of the amounts owing to Benchmark or anyone other than Capital City receiving payment.

26. Brown received the Notice of Assignment.

27. Brown and Benchmark entered into an agreement (the "Agreement"), pursuant to which Benchmark would fabricate certain window products for Brown (the "Goods"), the right to payment of which has been assigned to Capital City.

28. In accordance with its Agreement with Brown, Benchmark provided the Goods to Brown and issued the Outstanding and Unpaid Invoice to Brown for payment of the Goods.

29. Brown has breached its contract with Capital City, as the assignee of the right to payment under Brown's Agreement with Benchmark, by failing and/or refusing to pay the Outstanding and Unpaid Invoice.

30. Brown received the Outstanding and Unpaid Invoice and has failed and/or refused to pay Capital City for the amounts due and owing for the Outstanding and Unpaid Invoice.

31. Brown has at no time, prior to this litigation, communicated any objection to Capital City in respect to any of the goods and/or services provided by Benchmark to Brown, which were produced or performed to support the amounts due under the Outstanding and Unpaid Invoice owed by Brown to Capital City.

32. Capital City has suffered damages as a result of Brown's breach.

33. Capital City has suffered damages by virtue of Brown having failed to fulfill its obligation to make payment to Capital City under the terms of the Outstanding and Unpaid Invoice and as statutorily required by Colorado Statutes § 4-9-406 and § 4-9-607.

34. Brown owes Capital City the sum of $128,052.00 on the Outstanding and Unpaid Invoice and any other invoices issued by Benchmark to Brown that may become known through discovery, plus prejudgment interest at the rate prescribed by law.

**WHEREFORE,** Plaintiff Capital City Bank demands judgment against Defendant Brown Contractors, Inc. in the amount of at least $128,052.00, plus any other amounts owing to Capital City Bank as a result of the assignment of Benchmark's right to receive payment discovered in the course of this litigation, together with prejudgment interest, costs, and such other relief as this Court deems necessary and proper.

Respectfully submitted this 26th day of October, 2017.

*s/ Gregory S. Tamkin*
Gregory S. Tamkin
DODRSEY & WHITNEY LLP
1400 Wewatta Street, #400
Denver, CO   80202
Tel.  (303) 629-3400
Email:  tamkin.greg@dorsey.com

Attorneys for Plaintiff Capital City Bank

<u>Address of Plaintiff</u>
P.O. Box 900
Tallahassee, FL  32302